**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-2401
_____

JERZY JOZET DELEKTA,
AKA Jerzy Delekta,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES OF AMERICA,

Respondent
_____

On Petition for Review from the Board of Immigration Appeals
(Agency No. A089-006-176)
Immigration Judge:  Hon. Amiena A. Khan
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
March 17, 2016

Before:  CHAGARES, RESTREPO, and VAN ANTWERPEN, Circuit Judges.

(Filed: March 21, 2016)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

CHAGARES, Circuit Judge.

Petitioner Jerzy Delekta contends that the Immigration Judge ("IJ") erred by failing to terminate removal proceedings against him despite violations of his due process rights in the initiation of those proceedings, or at least erred by not permitting him to pursue a claim for cancellation of removal. He asks that we reverse the IJ's removal order and either dismiss the removal proceedings or remand the case to permit him to seek cancellation of removal. For the reasons that follow, we will deny the petition.

I.

Because we write exclusively for the parties, we set forth only those facts necessary to our disposition. Delekta is a Polish national admitted to the United States on October 28, 1999 and authorized to remain for only one year. He remained in the United States beyond that one-year period and fathered children who are U.S. citizens. The Department of Homeland Security ("DHS") initiated removal proceedings in February 2009, charging him with removability under 8 U.S.C. § 1227(a)(1)(B) for remaining in the United States longer than permitted.

Several hearings regarding the removal charges were held between 2009 and 2013. Delekta conceded that he was removable. Administrative Record ("A.R.") 72. Further, although he stated his intent to "explore eligibility for cancellation of removal" during a June 22, 2010 hearing, he voiced no opposition to the IJ's statement that the Notice to Appear ("NTA") that initiated the proceedings was served on February 10, 2009, less than ten years after Delekta's entry into the United States, which would ordinarily make him ineligible for cancellation of removal under 8 U.S.C. §§ 1229b(b)(1)(A) and

2

1229b(d)(1).  Id. at 73-74.  The issue that Delekta wanted to "explore" was whether his date of entry into the United States might have been earlier.  Id.; see also id. at 79-80 (repeating this position at an August 21, 2012 hearing).

On September 26, 2013, Delekta petitioned the IJ to terminate removal proceedings, claiming that (1) he was unlawfully detained by DHS between February 5, 2009 and February 24, 2009, thereby invalidating any NTA that was served during that time period (and thus the removal proceedings themselves), and (2) the NTA was invalid, having been served by someone other than an official authorized under 8 C.F.R. §§ 239.1 and 1239.1.  In the alternative, Delekta requested that the date of service for the NTA be "tolled" to June 22, 2010, because there had allegedly been a stipulation to that date of service during the June 22, 2010 hearing.  He argued that success on either claim would effectively mean that removal proceedings did not begin prior to the ten-year cutoff on October 28, 2009, and therefore that he would be eligible for cancellation of removal.

But on December 23, 2013, the IJ denied Delekta's motion and ordered him removed to Poland.  The IJ concluded that Delekta had failed to plead these claims and had conceded proper service of the NTA, and that no egregious circumstances warranted allowing Delekta to withdraw the concession and replead, citing Matter of Velasquez, 19 I. & N. Dec. 377, 382 (BIA 1986) ("Absent egregious circumstances, a distinct and formal admission made before, during, or even after a proceeding by an attorney acting in his professional capacity binds his client as a judicial admission.").

The IJ nonetheless addressed Delekta's claims about the NTA.  Regarding the unlawful detention, the IJ credited DHS documents showing that Delekta was not

3

detained until February 24, 2009, either concurrent with or subsequent to service of the NTA and an arrest warrant, meaning that Delekta was never unlawfully detained. The IJ also noted the absence of any legal authority for the proposition that an unlawful detention would invalidate a properly served NTA. Next, the IJ rejected Delekta's argument regarding improper service of the NTA under 8 C.F.R. §§ 239.1 and 1239.1, concluding that those regulations pertain only to those who may issue NTAs, not those who may serve them. Finally, the IJ rejected the claim that June 22, 2010 had been stipulated as the date of service, finding no support for that in the transcript of the June 22, 2010 hearing.[1] Instead, the IJ found that the NTA was served in February 2009, as attested in the certificate of service.

The Board of Immigration Appeals ("BIA") affirmed the IJ's order on May 6, 2015, without issuing a written opinion. On June 5, 2015, Delekta filed the instant petition for review.

## II.

The BIA exercised jurisdiction under 8 C.F.R. §§ 1003.1(b)(3) and 1240.15. We exercise jurisdiction to review final orders of removal under 8 U.S.C. § 1252. "Where, as here, the BIA affirms the IJ's decision without opinion, 'we review the IJ's opinion and scrutinize its reasoning.'" Chen v. Gonzales, 434 F.3d 212, 216 (3d Cir. 2005) (quoting

---

[1] IJ Amiena A. Khan, who denied Delekta's motion and entered the removal order, was not present at the June 22, 2010 hearing where the stipulation was allegedly entered into. Delekta's case was originally assigned to IJ Susan Roy, then temporarily assigned to IJ Rodger Harris (who presided at the June 22, 2010 hearing) before being reassigned to IJ Khan. There is no merit to Delekta's argument that the reassignment of his case, which took place long before the IJ addressed his motion to terminate and ordered him removed, somehow makes reversal fairer or more appropriate than it otherwise would be.

4

Dia v. Ashcroft, 353 F.3d 228, 245 (3d Cir. 2003) (en banc)). "Review of an IJ decision is conducted under the substantial evidence standard which requires that administrative findings of fact be upheld 'unless any reasonable adjudicator would be compelled to conclude to the contrary.'" Id. (quoting 8 U.S.C. § 1252(b)(4)(B)). "We exercise de novo review over constitutional claims or questions of law and the application of law to facts." Garcia v. Att'y Gen., 665 F.3d 496, 502 (3d Cir. 2011) (quoting Yusupov v. Att'y Gen., 518 F.3d 185, 197 (3d Cir. 2008)) (quotation marks omitted).

III.

In his petition, Delekta repeats the arguments made to the IJ. Even setting aside the matter of Delekta's failure to raise these issues prior to the September 26, 2013 motion, his arguments lack merit.

The IJ's determination that Delekta was not detained by DHS until February 24, 2009 was supported by substantial evidence — namely, contemporaneous DHS documents recording February 24, 2009, as the date of Delekta's detention. A.R. 274-77. The IJ was also correct that 8 C.F.R. §§ 239.1 and 1239.1 do not invalidate the NTA. Those regulations list immigration officials who "may issue a notice to appear" and provide that "[s]ervice of the notice to appear shall be in accordance with section 239 of the Act." 8 C.F.R. §§ 239.1, 1239.1 (emphases added). Section 239 of the Immigration and Nationality Act, in turn, requires only that "written notice (in this section referred to as a 'notice to appear') shall be given in person to the alien (or, if personal service is not practicable, through service by mail to the alien or to the alien's counsel of record, if any)." 8 U.S.C. § 1229(a)(1).

5

We agree with Delekta that the record contains some ambiguity regarding the date on which the NTA was served. The certificate of service was preprinted with the signature of Immigration Enforcement Agent Gerardo Ore and a date of service of February 10, 2009, but his name was crossed out and replaced by a handwritten signature of Deportation Officer Bernard Sullivan. A.R. 313. Sullivan also served and signed the arrest warrant, on which he crossed out not only Ore's preprinted name, but also the preprinted date of February 10, 2009, replacing it with a handwritten date of February 24, 2009. Id. at 274.

But the IJ was not required to credit Delekta's explanation for the discrepancy. Delekta argues that Ore "attempted" and failed (because Ore was not authorized under 8 C.F.R. §§ 239.1 and 1239.1) to serve the NTA on February 10, 2009, which accounts for why Delekta's inked fingerprint (in lieu of a signature) appears on the certificate of service. Delekta Br. 8, 22. According to Delekta, later service by Sullivan on February 24, 2009, never happened. Id. The IJ instead concluded that Sullivan did serve the NTA and that the preprinted date of service of February 10, 2009, was left as the result of a "scrivener's error." App. 8. We have reviewed the record and conclude that the IJ's finding was not erroneous, as a "reasonable adjudicator would [not] be compelled to conclude to the contrary." Chen, 434 F.3d at 216 (quoting 8 U.S.C. § 1252(b)(4)(B)) (quotation marks omitted).

Further, the exact date in February 2009 on which the NTA was served is ultimately irrelevant, both as to the validity of the removal proceedings and as to Delekta's eligibility for cancellation of removal. Even if we accepted Delekta's

6

contention that no service occurred on February 24, 2009 (a contention that the IJ was not compelled to accept), his argument would still fail because it relies on the faulty premise that 8 C.F.R. §§ 239.1 and 1239.1 rendered service by Ore improper. Ore, no less than Sullivan, was competent to serve the NTA. Whether the NTA was served on February 10 by Ore, February 24 by Sullivan, or both, the service was proper and took place prior to or concurrent with Delekta's detention, and well before the ten-year cutoff date of October 28, 2009, thereby barring Delekta from seeking cancellation of removal.

Finally, the record contains no evidence of a stipulation that the NTA was served on June 22, 2010 — much less evidence that would have compelled the IJ to reach a different conclusion. Delekta claims that the transcript of June 22, 2010 hearing does not reflect the stipulation because it is incomplete. He also points to an unexplained handwritten notation "RHC 06/22/10" on the NTA, which he interprets as documentation of the stipulation, but there is no evidence that it means what Delekta claims. A.R. 312. Further, the transcript of the June 22, 2010 hearing that does exist, even if somehow incomplete, cuts strongly against Delekta's argument. Near the end of the hearing, Delekta concurred with the IJ's statement that the NTA was served in February 2009, which would make little sense if, in the same hearing, Delekta had stipulated or was planning to stipulate to June 22, 2010, as the date of service. Id. at 71, 73-74.

IV.

For the foregoing reasons, the petition for review will be denied.